UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FINANCIAL FEDERAL CREDIT INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:08-cv-02422 |
| | § | |
| CURTIS EXCAVATING, LLC, et al., | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is the Motion for Summary Judgment of Plaintiff Financial Federal Credit, Inc. ("FFC"). (Doc. No. 17.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Motion should be granted in part and denied in part.

I.      BACKGROUND

A. The Note and Guaranties

This case arises out of a loan FFC made to Defendant Curtis Excavating, LLC ("Excavating"). In September 2007, Excavating approached FFC to finance outstanding obligations it had with eight lenders. (Copple Aff. ¶ 4.)[1] FFC claims that, on or about September 7, 2007, Excavating executed and delivered to FFC a promissory note in the amount of $827,172.00 ("Note"). (Doc. No. 18, Ex. A.) The Note was to be paid in 36 monthly installments commencing on October 7, 2007. (*Id.*) The Note was secured by a security agreement ("Security Agreement") executed simultaneously wherein Excavating granted FFC a security interest in certain equipment described in Schedule "A" of the Security Agreement ("the

---

[1] These facts are either undisputed or, for the purpose of this Motion only, presented in the light most favorable to Defendants.

1

Equipment"), including all attachments and accessories, as well as a blanket security interest in all assets of Excavating ("the Blanket Collateral"). (*Id.* at ¶ 5; Doc. No. 18, Ex. B.) FFC perfected its interest in the Equipment and the Blanket Collateral by filing UCC financing statements in all appropriate locations and by recording its lien on the titles to the Equipment. (*Id.* at ¶ 8.) Both the Note and the Security Agreement provide for acceleration of all indebtedness due under the terms of the Note in the event of a default by Excavating under any of its obligations to FFC. (*Id.* at ¶ 7.)

Defendant Eric Curtis claims that the signature on the Note and the Security Agreement do not belong to him or anyone with authority to bind Excavating. (Curtis Aff. ¶¶ 2-3.) The parties agree that, in 2003, both Eric Curtis and Joni Curtis executed and delivered to FFC guaranties for Excavating's obligations ("2003 Guaranties"). (Copple Aff. ¶¶ 8-9; Doc. No. 17, Ex. C-D.) FFC asserts that these were continuing guaranties, and that, in September 2007, both Eric Curtis and Joni Curtis executed new guaranties ("2007 Guaranties") for Excavating's obligations. (Copple Aff. ¶¶ 10-11; Doc. No. 17, Ex. E-F.) Eric Curtis claims that he did not sign the 2007 Guaranties. (Curtis Aff. ¶ 4.) Additionally, he claims that he is familiar with Joni Curtis's signature and that neither signature on the 2007 Guaranties appears to be hers. (*Id.* at ¶ 4.) Eric Curtis claims that the 2003 Guaranties for the original loan were superseded by the Note, and that neither he nor Joni Curtis signed the 2007 Guaranties. (*Id.* at ¶ 6.)

### B. The Foreclosure Sales

Excavating defaulted on the Note, and FFC took possession of the Equipment. Eric Curtis asserts that, in May 2008, Excavating requested payoff information from FFC so that it could sell individual pieces of equipment in order to attempt to pay off the Note. FFC refused to give Excavating separate breakdowns on each piece to sell. Instead, FFC would give Excavating

only a lump sum payoff for all the Equipment. (Curtis Aff. ¶ 7.) FFC sold the Equipment in three auctions ("the Sales"). Twenty-one items[2] were sold on September 4, 2008 ("First Sale"), one item[3] was sold on December 23, 2008 ("Second Sale"), and five items[4] were sold on January 14, 2009 ("Third Sale"). (Copple Aff. ¶ 15.) Two items were scheduled for sale on May 1, 2009. (*Id.*) The remaining item requires repairs and, subject to a potential possessory lien, will eventually be repaired and made available for sale, with any profits credited towards Defendants' indebtedness. (*Id.*)

### 1. The First Sale

Eric Curtis and Joni Curtis were notified of the First Sale by correspondence dated August 20, 2008, sent by certified mail with return receipt requested and by first class mail with postage prepaid. The notice sent by certified mail was returned to FFC as "unclaimed," and the notice sent by first class mail has not been returned. (Copple Aff. ¶¶ 16-17.) Eric Curtis claims that Excavating had a contract with Ritchie Brother Auctioneers to sell the Equipment. (Curtis Aff. ¶ 8.) Ritchie Brothers are leaders at selling equipment, and they advertise to the world market. (*Id.*) The day before Ritchie Brothers was to auction the Equipment, Rodney Sepulveda of FFC demanded that Excavating pay $100,000 or FFC would not let the Equipment go to auction. (*Id.* at ¶ 9.) Since Excavating could not pay this amount, Ritchie Brothers did not auction the Equipment. Defendants claim that the Sales occurred at smaller auctions with insufficient advertising. (*Id.*)

The First Sale was advertised and published in *The Contractors Hotline* on August 22, 2008, and FFC notified other potentially interested parties by sending notice of the sale to such

---

[2] The items sold at the First Sale included a number of trucks and cars of various sizes. Some of the trucks were equipped with air compressors, tool boxes, and lifts. Additionally, a backhoe was sold. (Copple Aff., Ex. G.)
[3] The item sold at the Second Sale was a 2007 Chevrolet Silverado Truck with a crew cab and diesel engine. (Copple Aff., Ex. H.)
[4] These items included four Chevrolet Silverado trucks and one Cadillac Escalade truck. (Copple Aff., Ex. I.)

parties via certified mail, return receipt requested, and/or first class mail.  (*Id.* at ¶ 18.)  Notices were faxed to twenty-one companies.  (Copple Aff., Ex. N.)  The Equipment was available for inspection several days prior to the sale, which was held at 2:00 p.m. in an easily accessible location in Las Vegas, Nevada.  (*Id.* at ¶ 20.)  Immediately prior to the commencement of the First Sale, the notice was read aloud, then bidding was opened and the Equipment was sold one item at a time.  (*Id.* at ¶ 21.)  The First Sale generated $186,200 which, according to FFC, was the reasonable market value for the Equipment.  (*Id.* at ¶ 21.)  The expenses associated with the First Sale totaled $7,774.72 and, according to Plaintiff, were reasonable and necessary.  (*Id.* at ¶ 22.)

Following the First Sale, Excavating filed for Bankruptcy; however, the automatic stay was lifted, granting FFC the authorization to sell the remaining Equipment.  (*Id.* at ¶ 24.)

### 2.  The Second Sale

Eric Curtis and Joni Curtis were notified of the Second Sale by correspondence dated December 23, 2008, sent by certified mail with return receipt requested and by first class mail with postage prepaid.  The notice sent by certified mail was returned to FFC as "unclaimed," and the notice sent by first class mail has not been returned.  (Copple Aff. ¶¶ 26-27.)  At the Second Sale, FFC sold one item for $20,000 which, according to Plaintiff, was its reasonable market value.  (*Id.* at ¶ 29.)

### 3.  Third Sale

Eric Curtis and Joni Curtis were notified of the Third Sale by correspondence dated December 30, 2008, sent by certified mail with return receipt requested and by first class mail with postage prepaid.  The notice sent by certified mail was returned to FFC as "unclaimed," and the notice sent by first class mail has not been returned.  (Copple Aff. ¶¶ 29-30.)  The Third Sale

was advertised in *The Contractors Hotline* on January 2, 2009 and in *The San Francisco Chronicle* on January 12, 2009; FFC also notified other potentially interested parties of the Third Sale by sending notice via certified mail, return receipt requested, and/or first class mail. (*Id.* at ¶ 31.) Notice of the sale was faxed to 21 potential customers (*Id.* at Ex. T.) The Third Sale was held at 11:00 a.m. in an easily accessible location in Hayward, California. (*Id.* at ¶ 32.) The Equipment was available for inspection several days before the sale. (*Id.*) Prior to the Third Sale's commencement, the notice was read aloud before bidding began; items were sold one at a time. (*Id.* at ¶ 33.) The Third Sale generated $53,100 which, according to Plaintiff, was a reasonable market value for the Equipment sold. (*Id.* at ¶ 34.) The expenses associated with the Third Sale were $6,334.33 which, according to Plaintiff, were reasonable and necessary. (*Id.* at ¶ 35.)

### C. Defendants' Outstanding Obligations

Plaintiff argues that, after crediting the net proceeds of the First, Second, and Third Sale to the amount Excavating owed, an unpaid balance of $388,418.19 remains. (Copple Aff. ¶ 37.) Further, Plaintiff alleges that Defendants owed $6,385.55 in attorney's fees and expenses as of April 15, 2009, plus bankruptcy interest at the rate of 18 percent. (*Id.* at ¶¶ 40-41.) Plaintiff further asserts that, as guarantors, Eric Curtis and Joni Curtis are jointly and severally liable for $388,418.19. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

### II.    ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th

Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could

enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899,

902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving

party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory

allegations, unsubstantiated assertions, and unsupported speculation are not competent summary

judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.

1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air

Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied

with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### B.  The 2007 Guaranties

Defendants argue that there is a fact issue as to whether Eric Curtis or Joni Curtis actually

signed the 2007 Guaranties and that the 2003 Guaranties were "superseded" by the 2007

Guaranties. Plaintiff replies that, even if it is true that Eric and Joni Curtis did not sign the 2007

Guaranties, they did sign the 2003 Guaranties, which are continuing. The Court must therefore

determine whether the 2003 Guaranties were continuing or, as Defendants claim, they were

superseded by the 2007 Guaranties.

In *Blount v. Westinghouse Credit Corporation*, the Texas Court of Appeals described a

"continuing guaranty":

> A continuing guaranty is one which is not limited to a single transaction, but which
> contemplates a future course of dealing, covering a series of transactions, generally for an

indefinite time or until revoked. It is prospective in its operation and is generally intended to provide security with respect to future transactions, within certain limits, and contemplates a succession of liabilities, for which, as they accrue, the guarantor becomes liable.

432 S.W.2d 549, 553 (Tex. App.—Dallas 1968, no writ) (citing 38 C.J.S. Guaranty § 7, p. 1142). Such guaranties, when reasonably contemplated by the parties in their original agreement, are effective and legally binding. *Id.* Whether the parties agreed to a continuing guaranty is a question of law that the court must resolve when, as in this case, neither party asserts that the guaranty is ambiguous. *Id.* at 552. A guaranty agreement must be strictly construed and may not be extended by construction or implication beyond its precise terms. *Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex. 1981).

In *Blount*, the two defendants entered into a guaranty for the obligations of a mobile home company so that it could obtain a line of credit from a bank. The guaranty stated that the defendants would be liable for all of the company's promissory notes, conditional sales contracts, mortgages, trust receipts, leases, and/or other evidence of indebtedness that were "now in force or hereafter made." The guaranty could be terminated on written notice, but the defendants would still be liable for all the company's obligations up to the effective date of the notice. After the guaranty was executed, the company entered into a repurchase agreement with the bank and later defaulted. The defendants argued that they had not agreed to guarantee the company's obligations under the repurchase agreement; however, the Texas Court of Appeals found that the continuing guaranty manifested the intent of the defendants "to guarantee present and future indebtedness of the [company] so long as such indebtedness was generally incurred within the usual scope of [its business]." *Id.* at 553.

The purpose of the 2003 Guaranties is expressed in their opening paragraphs: "[a]s a material inducement to FFC to provide one or more loans or other financial

accommodations to or for the benefit of Excavating, and/or enter into or accept one or more notes, loan agreements, security agreements ["Obligations"] ...." The 2003 Guaranties bound Eric and Joni Curtis to be liable for:

> the due payment and performance of all Obligations, and any and all future renewals, modifications, amendments, extensions, increases and/or supplements thereof, whether previously, contemporaneously, or subsequently created or incurred, and for the due payment and performance of any and all indebtedness and/or obligations of [Excavating] of whatever kind or character, whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or in the future arising, existing, incurred, contracted, or owing to FFC ....

(Doc. No. 17, Ex. C and D.)  Further, the 2003 Guaranties state that they "shall remain in full force and effect ... until full and indefeasible payment and performance of all Obligations, and thereafter until FFC's actual receipt of a written notice of termination of Guarantor's obligations hereunder ...." Defendants have not revoked or terminated the 2003 Guaranties. (Copple Supp. Aff. ¶ 3.)  As Plaintiff points out, nothing on the face of the 2003 Guaranties suggests that they apply to a single transaction.  Further, there is no language in the 2007 Guaranties indicating that they are meant to supersede the 2003 Guaranties.  The Court therefore finds that, as a matter of law, the 2003 Guaranties are still in force and apply to Excavating's obligations under the Note.[5]

### C. The Promissory Note

Eric Curtis also alleges that neither he nor anyone with authority to bind Excavating signed the Promissory Note.  While Defendants did not advance this argument in their Response, Plaintiff replies that Defendants ratified the Note by performance.  After the Note was executed, FFC advanced to Excavating's prior lenders $827,172.00 on Defendants' behalf. (Copple Supp. Aff. ¶ 4.)  FFC presents a letter dated September 7, 2007, allegedly signed by Defendants,

---

[5] Defendants have properly requested under Rule 56(f) that if the Court does not find Eric Curtis's affidavit to create a fact issue regarding the signatures on the 2007 Guaranties, it allow additional discovery on their authenticity. Because the Court finds that, per the 2003 Guaranties, Eric and Joni Curtis are responsible for Excavating's debt on the Note, the validity of the Signatures on the 2007 Guaranties is not material. Defendants' 56(f) motion is denied in this respect.

authorizing FFC to advance funds to a number of lenders ("Authorization Letter"). (Copple Supp. Aff. ¶ 4; Ex. 1.) FFC then sent an acknowledgment and verification copy of the Note and Security Agreement to Excavating after it received the executed copies ("Acknowledgment Letter"). (Copple Supp. Aff. ¶ 5; Ex. 2.) The letter asked Defendants to inspect the documents and advise FFC if there were any "discrepancies." Defendants did not contact FFC regarding any discrepancies or alleged forgery. (*Id.*) Between September 4, 2007 and March 19, 2008, FFC received at least six checks from Excavating ("Checks"), all allegedly signed by one of Defendants, for the exact amount required by the Note, $22,977.00. (*Id.* at ¶ 6; Ex. 3.) Defendants have not disputed the authenticity of the signatures on the Authorization Letter, the Acknowledgment letter, or the Checks.[6]

"[A] party ratifies an agreement when it recognizes the validity of the agreement by acting under it, performing under it, or affirmatively acknowledging it." *Prudential Insurance Company of America v. Italian Cowboy Partners, Ltd.*, 270 S.W.3d 192, 206 (Tex. App.— Eastland 2008, no pet.) (citing *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.—Eastland 2003, pet. denied)). Ratification also arises when a party retains the benefits of a transaction after acquiring full knowledge of it. *Solvex Sales Corp. v. Triton Manufacturing Co.*, 888 S.W.2d 845 (Tex. App.—Tyler 1994, pet. denied). Ratification may be express or implied from a course of conduct. *Prudential*, 270 S.W.3d at 206 (citing *Barker*, 105 S.W.3d at 84). After a party has ratified an agreement, it may not withdraw the ratification; acts that are inconsistent with an

---

[6] Further, Defendants' Rule 56(f) motion is limited to the authenticity of the signatures on the 2007 Guaranties. The Court notes that Plaintiff presented the Authorization Letter, Acknowledgment Letter, and the Checks, in its Reply as opposed to its original Motion, which explains, in part, why Defendants did not challenge the signatures on these documents in their Response. After receiving Plaintiff's Reply, however, Defendants did not file an additional Rule 56(f) Motion as to the signature on the Note, the Authorization Letter, the Acknowledgment Letter, or the Checks, and they did not move for leave to file a sur-reply.

intent to avoid the agreement have the effect of ratifying it. *Id.* A person ratifies an agreement as a matter of law if the evidence is not controverted or is incontrovertible. *Id.*

Excavating benefited from FFC's payment of $827,172.00 to Excavating's lenders, and it sent FFC the Authorization Letter instructing it to make such payments. Further, Excavating partially performed under the Note by sending the Checks to FFC. Finally, FFC notified Excavating of the Note by sending the Acknowledgment Letter; Defendants did not subsequently inform FFC that the Note was fraudulently executed. The Court therefore holds that, as a matter of law, Excavating ratified the Note. As a result, even if the Note was fraudulently signed, Eric Curtis and Joni Curtis are still liable for Excavating's debt under the Note. *Reece*, 566 S.W.2d at 297-298.

### D. Reasonableness of the Sales

Defendants contend that the Sales were not commercially reasonable because Plaintiff did not allow Defendants to sell the Equipment in individual units, but rather required Excavating to obtain a lump sum payment for all the Equipment. Further, Defendants argue that FFC prevented Ritchie Brothers from selling the Equipment and instead allowed it to be auctioned at smaller local auctions with insufficient advertising. Defendants also move, pursuant to Rule 56(f), to conduct additional discovery regarding the reasonableness of the Sales.[7]

---

[7] Rule 56(f) of the Federal Rules of Procedure allows parties to seek more discovery given the early-filed Motions for Summary Judgment. The rule provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f); *Beattie v. Madison County School Dist.*, 254 F.3d 595, 605 (5th Cir. 2001). Rule 56(f) Motions are viewed favorably and liberally granted. *Id.* at 605 (internal citations omitted). The party must show (1) why it needs additional discovery and (2) how the discovery will create a genuine issue of material fact. *Six Flags, Inc. v. Westchester Surplus Lines, Inc.*, 565 F.3d 948, 963 (5th Cir. 2009); *Beattie*, 254 F.3d at 605. Once the party has demonstrated that diligent efforts to obtain the discovery have been

Plaintiff responds that, had it allowed Ritchie Brothers to auction the Equipment, it would not have had the ability to "credit bid" to protect its interest in the Equipment. (Copple Supp. Aff. ¶ 7.) Finally, Plaintiff argues that the procedures used at an auction, not the total price obtained for the collateral, determine whether a sale was commercially reasonable.

The Texas Business and Commerce Code provides that "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." TEX. BUS. & COM. CODE ANN. § 9.610(a). The method, manner, time, place, and other terms of the disposition must be commercially reasonable. *Id.* at § 9.610(b). "If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms." *Id.* The statute provides that a sale is commercially reasonable if it is made "(1) in the usual manner on any recognized market; (2) at the price current in any recognized market at the time of the disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *Id.* at § 9.627(b). "The fact that a greater amount could have been obtained by a ... disposition ... at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the ... disposition ... was made in a commercially reasonable manner." *Id.* at § 9.627(a).

Whether a sale of collateral was commercially reasonable is a fact question. *Gordon & Assoc. v. Cullen Bank Citywest, N.A.*, 880 S.W.2d 93, 96 (Tex. App.—Corpus Christi 1994, no

---

unsuccessful, a 56(f) motion "should be granted almost as a matter of course." *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (internal citations omitted); *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 162 (5th Cir. 2006) (denying a Rule 56(f) motion because the summary judgment non-movant failed to diligently pursue the evidence within the time allotted for a previous continuance).

writ) (citations omitted).  Because Defendants have challenged the commercial reasonableness of the Sales, Plaintiff has the burden to show that the sales were commercially reasonable.  TEX. BUS. & COMM. C. § 9.626.  A low sales price suggests the court should scrutinize carefully all aspects of the disposition to ensure each aspect was commercially reasonable.  *Lister v. Lee-Swofford Investments, LLP*, 195 S.W.3d 746, 748 (Tex. App.—Amarillo 2006, no pet.).  "Courts have considered any number of factors to evaluate the commercial reasonableness of a disposition of collateral, including whether the secured party endeavored to obtain the best price possible, whether the sale was private or public, the condition of the collateral and any efforts made to enhance its condition, the advertising undertaken, the number of bids received and the method employed in soliciting bids." *Id.* at 749 (citations omitted).

Dirk Copple, FFC's Vice President, testified via affidavit that, in his experience, the sale of the Equipment was commercially reasonable in all respects.  (Copple Aff. ¶ 36.)  Copple has sixteen years of experience in the equipment finance business, attended numerous sales of commercial equipment, and personally arranged at least fifty public sales.  (*Id.*)  Copple further testifies that FFC declined to allow the Equipment to be sold by Ritchie Brothers because FFC would not have had the ability to "credit bid" to protect its interest in the Equipment.  (Copple Supp. Aff. ¶ 7.)

By alleging that Ritchie Brothers, and not the smaller local auctions in Hayward and Las Vegas, was the recognized market for the Equipment, Defendants have created a fact issue as to whether the sale was commercially reasonable.  There is no evidence, for example, indicating that excavating equipment is typically sold at Hayward and Las Vegas auctions.  *See Morgan Stanley Dean Witter Credit Corporation v. Griffin*, No. 03-01-00131-CV, 2002 WL 463312, at *4 (Tex. App.—Austin 2002, no pet.).  Plaintiff does not refute Defendants' assertion that

Ritchie Brothers was a recognized market for the Equipment; rather, it objects on the basis that it would not have received "credit bid" protection. This does not speak to the issue of whether the sale was commercially reasonable. Plaintiff has not presented evidence indicating that the Las Vegas and Hayward auctions were recognized markets for excavating equipment.

Plaintiff has presented evidence that it undertook some advertising for the First Sale and the Third Sale, including a total of three newspaper advertisements and approximately forty faxes. It has not demonstrated whether it advertised for the Second Sale. The Court therefore finds that Defendants have alleged a fact issue regarding the advertising and a forum of the sales which, at the very least, should not be resolved without some discovery.

### E. The UCC Filings

Finally, Defendants move for additional discovery pursuant to Rule 56(f), claiming they have never seen the UCC filings verifying that Plaintiff perfected its interest in the Note. Plaintiff presented Copple's affidavit, however, asserting that the interest had been perfected. Defendants do not specify why they were unable to independently verify the UCC filings or whether Plaintiff recorded its interest, both of which would be a matter of public record.

### III.   CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment is **GRANTED** as to Defendants' liability under the 2003 Guaranties and Defendants' ratification of the Note. Plaintiff's Motion is **DENIED** as the commercial reasonability of the Sales.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 17 day of August, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**